UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUDY L. PARA-KILLMAN, <br><br> Plaintiff, <br><br> v. <br><br> ARIA RESORT & CASINO HOLDINGS, LLC, <br><br> Defendant. | Case No. 2:13-CV-01630-APG-CWH <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** <br><br> (Dkt. #17) |

Plaintiff Trudy Para-Killman filed a single-count complaint alleging that defendant Aria Resort & Casino LLC[1] failed to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"). Para-Killman was a cocktail server at Aria who was disabled due to painful foot conditions. She contends that Aria refused to accommodate her request to wear alternative footwear or to work in a position that did not require her to wear high heels. According to Para-Killman, Aria constructively discharged her by failing to accommodate her disability.

Aria moves for summary judgment, arguing that Para-Killman was not qualified to perform the essential functions of her job as a cocktail server with or without accommodations. According to Aria, Para-Killman was medically unable to stand, walk, or lift as required by her job even with accommodations. Additionally, Aria contends that Para-Killman chose to terminate her employment because she was too disabled to perform any work even with accommodations, as shown by her applications for disability benefits both before, during, and after she worked at Aria.

Para-Killman responds that genuine issues of fact remain regarding whether she was qualified to perform her job as a cocktail server if accommodated with different shoes and

---

[1] Improperly named in the caption as Aria Resort Holdings LLC, dba Aria Resort & Casino.

whether Aria denied this accommodation.  Para-Killman contends she had to stop working after her health deteriorated because Aria would not grant her request to wear shoes that did not comply with Aria's dress code.  According to Para-Killman, her requests for disability benefits are not inconsistent with her claim that she can perform work as a cocktail server if accommodated.  Finally, Para-Killman contends Aria constructively discharged her after it failed to engage in the interactive process to find an accommodation and refused to allow her to wear a shoe that did not fall within the company's dress code.

**I.  LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  I must view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**II.  ADA**

To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show: "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Samper v.*

1  *Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quotation omitted).  The
2  parties do not dispute that Para-Killman is disabled within the ADA's meaning.  The remaining
3  issues are whether Para-Killman was a qualified individual and whether she suffered an adverse
4  employment action because of her disability.

**A.  Qualified Individual**

An individual is qualified if "with or without reasonable accommodation," she can "perform the essential functions of the employment position [she] holds or desires." 42 U.S.C. § 12111(8).  To determine whether a plaintiff is qualified, I first "inquire[] as to the job's essential functions, after which the plaintiff must establish that she can perform those functions with or without reasonable accommodations." *Samper*, 675 F.3d at 1240.  The employer bears "the burden of production in establishing what job functions are essential." *Id.* at 1237 (quotation omitted).  The plaintiff bears the burden of proving she is a qualified individual. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1086 (9th Cir. 2006).

*1. Essential Functions*

The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).  In determining what functions are essential, "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3)(i).

Here, Aria has presented evidence that standing, walking, and carrying heavy serving trays are essential functions of the job of cocktail server. (*See, e.g.*, Dkt. #17-1 at 2-4.)  Para-Killman does not dispute that walking, standing, and carrying are essential functions. (Dkt. #18-5 at 15-16.)

*2. Performing the Essential Functions*

Para-Killman does not dispute she could not perform the essential functions of walking, standing, and carrying while wearing shoes with the heel height and shape required by Aria's

1  dress code.  However, Para-Killman has presented evidence raising an issue of fact that she could
2  perform these essential functions with reasonable accommodation, such as being allowed to wear
3  a shoe with a lower heel height and with a sole that makes more contact with the ground. (*See,*
4  *e.g.*, Dkt. #18-12 at 37-42.)

5  Although Para-Killman and her doctors made statements in applications seeking disability
6  benefits that suggest she could not perform work as a cocktail server, these statements are not
7  necessarily incompatible with her claim that she is a qualified individual. *See Cleveland v. Policy*
8  *Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999) (noting that the ADA defines a qualified
9  individual to include a person who can perform the essential functions with reasonable
10 accommodation, but the Social Security Act does not take reasonable accommodations into
11 account).  Where the plaintiff makes a prior sworn statement effectively asserting she is totally
12 disabled, the plaintiff must explain "any apparent inconsistency with the necessary elements of an
13 ADA claim." *Id.* at 807.  The plaintiff's explanation "must be sufficient to warrant a reasonable
14 juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier
15 statement, the plaintiff could nonetheless perform the essential functions of her job, with or
16 without reasonable accommodation." *Id.* (internal quotation marks omitted).

17 Here, Para-Killman explained that her claims for disability benefits prior to employment
18 at Aria were related to her recovery from foot surgery and her doctor cleared her to work before
19 she began at Aria. (Dkt. #18-5 at 25-27; Dkt. #18-13 at 6, 8.)  She explained she stopped working
20 at Aria and sought disability benefits in January 2010 because she was not making progress
21 finding a shoe that would work for both her and the company and she was experiencing
22 increasing pressure and stress from the situation. (Dkt. #18-6 at 17-18, 24, 27; Dkt. #18-12 at 42-
23 43.)  According to Para-Killman, she needed either an accommodation for her footwear or a
24 modification of her job, neither of which Aria granted. (Dkt. #18-12 at 50)  This unresolved
25 situation combined with external stressors led her to take time off from active duty while Aria
26 determined what to do to accommodate her. (*Id.*)  Para-Killman denied that she thought she was
27 permanently unable to work as a cocktail server. (Dkt. #18-13 at 11.)
28

She explained that her applications for disability with the Social Security Administration and with her private insurance did not account for whether she could perform the job with an accommodation. (Dkt. #18-13 at 47; Dkt. #18-14 at 17.) According to Para-Killman, when she stated in paperwork that she could not walk or stand, she meant she could not do so if forced to wear a shoe that complied with Aria's shoe policy. (Dkt. #18-4 at 2-3; Dkt. #18-13 at 50.) She testified she was capable of working if allowed to wear appropriate footwear. (Dkt. #18-4 at 2.) Additionally, Para-Killman contends that any discrepancies are explained by the fact that her condition deteriorated since the time she was actively working at Aria. (Dkt. #18-14 at 13-14.) Accepting as true Para-Killman's good-faith belief that her statements seeking disability benefits did not address whether she could perform the job if Aria had approved alternate footwear or modified her job, a reasonable jury could find Para-Killman was a qualified individual who could perform the essential functions of her job with reasonable accommodation.

### B. Adverse Employment Action

Constructive discharge is an adverse employment action. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) ("Constructive discharge is . . . just one form of wrongful discharge."); *Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988). Para-Killman has raised issues of fact regarding whether Aria engaged in the interactive process and whether it refused to accommodate her disability such that she was constructively discharged. A reasonable jury could find that Aria managers repeatedly verbally reprimanded Para-Killman for wearing out-of-policy shoes. (Dkt. #18-5 at 8-9; Dkt. #18-6 at 9, 12, 17-18; Dkt. #18-12 at 5, 12-13, 24.) A reasonable jury also could conclude that Para-Killman repeatedly requested to be allowed to wear alternative footwear or to have her job modified and those requests were denied or ignored. (Dkt. #18-5 at 11; Dkt. #18-6 at 3, 10-12, 15-17, 19-20, 24, 26; Dkt. #18-12 at 6, 8, 16-21, 36; Dkt. #18-13 at 18-19.) Further, a reasonable jury could find that as the time approached for Para-Killman to return to active duty, Aria personnel told her she would have to wear the company-approved shoe, causing her to resign. (Dkt. #18-13 at 14-17). Accordingly, genuine issues of fact remain regarding whether Aria engaged in the interactive process and whether Aria's alleged

refusal to accommodate resulted in Para-Killman's constructive discharge. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008) ("[W]hen an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered, a jury may conclude that the employee's resignation was both intended and foreseeable."); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (stating a "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job" (quotation omitted)).

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Aria Resort & Casino LLC's motion for summary judgment (Dkt. #17) is DENIED.

IT IS FURTHER ORDERED that the clerk of court shall correct the caption to accurately reflect Aria Resort & Casino LLC as the defendant's name.

DATED this 20th day of March, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE